UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

ALBERT H. McCOUBREY, III,
　　　　　　　*Plaintiff-Appellant,*

v.

KELLOGG, KREBS & MORAN, a
partnership; MARK E. KELLOGG,
P.C.; WILLIAM F. KREBS, P.C.;
GEORGE LEROY MORAN, P.L.C.;
RICHARD P. BUZAN,
　　　　　　　*Defendants-Appellees.*

No. 00-1608

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Andre M. Davis, District Judge.
(CA-99-3781-AMD)

Argued: January 23, 2001

Decided: April 4, 2001

Before NIEMEYER and MOTZ, Circuit Judges, and
David A. FABER, United States District Judge for
the Southern District of West Virginia, sitting by designation.

Affirmed by unpublished opinion. Judge Faber wrote the opinion, in
which Judge Niemeyer and Judge Motz joined.

## COUNSEL

**ARGUED:** David Thomas Ralston, Jr., HOPKINS & SUTTER,
Washington, D.C., for Appellant. David Bruce Stratton, JORDAN,

COYNE & SAVITS, L.L.P., Washington, D.C., for Appellees. **ON BRIEF:** John D. Brosnan, Fairfax, Virginia, for Appellant. J. Paul Mullen, Kathleen M. Bustraan, LORD & WHIP, P.A., Baltimore, Maryland; Richard T. Tomar, MARGOLIUS, MALLIOS, DAVIS, RIDER & TOMAR, Washington, D.C., for Appellees.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

## OPINION

FABER, District Judge:

Albert H. McCoubrey, III ("McCoubrey") appeals from a final order of the United States District Court for the District of Maryland dismissing a legal malpractice claim against his former lawyers, their professional corporations and a now-dissolved Virginia law firm. Finding no error in the judgment of the district court, we affirm.

I.

McCoubrey, a resident of Maryland, was president and majority shareholder of Integrated Design & Construction, Inc. ("IDC"). IDC managed design and construction of embassy facilities for the United States Department of State.

In 1996, Ronald G. Eberhardt ("Eberhardt"), Senior Staff Vice President of IDC, brought a *qui tam* action in federal court in Virginia against IDC and McCoubrey under 31 U.S.C. § 3730(b)(1), the federal "whistle blower" statute, for fraudulent billing in violation of the False Claims Act, 31 U.S.C. § 3729. Eberhardt also contended that IDC had discriminated against him by decreasing his salary, and by demoting and terminating him in retaliation for acts he took in furtherance of his *qui tam* action. The law firm of Kellogg, Krebs & Moran, IDC's primary corporate counsel, represented McCoubrey and IDC in the civil action. Kellogg, Krebs & Moran was a Virginia

law partnership whose partners consisted of three professional corporations, Mark E. Kellogg, P.C., William F. Krebs, P.C., and George Leroy Moran, P.L.C. Initially, Kellogg represented IDC in the Eberhardt suit and Krebs represented McCoubrey. When it became apparent that Kellogg was a potential witness in the case, Richard P. Bazun, another attorney with the Kellogg firm, assumed representation of IDC. After the trial McCoubrey replaced the Kellogg firm with new counsel, Hopkins & Sutter, a District of Columbia firm with experience in government contract litigation. The new firm, in a post-trial Rule 60 motion, moved to dismiss the case as to McCoubrey on the ground that he was not an "employer" within the meaning of the whistle blower statute and therefore not amenable to suit. The Kellogg firm had failed to plead this as a defense or otherwise raise the issue prior to trial on the merits.

The United States intervened and settled the *qui tam* claim. Eberhardt's discrimination case went to trial and resulted in a $417,700.99 verdict in his favor against IDC and McCoubrey. Upon post-trial motions, Eberhardt was granted prejudgment interest on his back pay award and attorneys fees. The judgment currently exceeds $650,000. The district court subsequently granted McCoubrey's motion under Rule 60(b) and relieved him from the judgment on the ground that he could not be held liable as an employer under 31 U.S.C. § 3730(h).

Eberhardt appealed the case to this court, which reversed the trial court's ruling on McCoubrey's Rule 60(b) motion and affirmed it in all other respects. *See Eberhardt v. Integrated Design & Construction, Inc.*, 167 F.3d 861 (4th Cir. 1999). The Court of Appeals reasoned that McCoubrey's defense that he was not an "employer" for purposes of § 3730(h) was essentially a motion for failure to state a claim under Rule 12(b)(6) which was waived because not made prior to trial on the merits.

McCoubrey then filed the present action for legal malpractice against the Kellogg firm, the three professional corporate partners of the Kellogg firm, and individual defendants Kellogg, Krebs, Moran and Bazun.[1] The action was filed in the United States District Court

---

[1]The District Court dismissed Bazun for want of personal jurisdiction, a ruling that has not been appealed.

for the District of Maryland, with jurisdiction based on diversity of citizenship. The trial court, applying the Maryland conflicts rule, determined that Virginia substantive law applied and that, under Virginia law, McCoubrey's action was premature because he had not pleaded actual payment of the judgment. From the dismissal of his case for failure to state a claim under Rule 12(b)(6) McCoubrey appealed to this court.

Two issues presented on appeal are dispositive of this case. First, did the District Court err in applying Virginia, as opposed to Maryland, substantive law? Second, did the District Court err in holding that under Virginia law a legal malpractice case may not be brought until the complaining plaintiff has actually paid the judgment against him?

## II.

The issues on this appeal stem from the Virginia case of *Allied Productions, Inc. v. Duesterdick*, 217 Va. 763, 232 S.E.2d 774 (1977), in which the Virginia Supreme Court adopted the "payment rule" for attorney malpractice actions. Under the payment rule, damages in such a case are not deemed to occur until payment is made by the injured party. If *Allied Productions* is applied here, McCoubrey has suffered no damages and has no course of action until he actually pays the judgment against him.

Maryland follows a different course. The Maryland courts have expressly rejected the payment rule in favor of a "judgment rule," permitting a malpractice suit to proceed as soon as a judgment is obtained against the aggrieved client. *See Roebuck v. Steuart*, 76 Md. App. 298, 544 A.2d 808 (1988). In *Roebuck*, liquor suppliers brought an action against the guarantor of a bankrupt corporation's debts. The guarantor sued his attorney for malpractice seeking indemnity. The Maryland Court of Special Appeals rejected the payment rule in favor of a "judgment rule" which allowed recovery against the indemnitor when judgment against the indemnitee was entered, although not yet paid. The court discussed *Allied Productions* and rejected its reasoning. The consequences of the choice of law between Maryland and Virginia in this appeal are therefore draconian — if we follow *Allied*

*Productions* and Virginia law, McCoubrey loses; if we apply Maryland law, he wins.

McCoubrey has a fall back position if he loses on the choice of law: he attacks the payment rule of *Allied Productions* on two grounds. First, he says, the payment rule is no longer the law in Virginia; it has been changed by the legislature, rejected by a lower court, and would no longer be followed by Virginia's highest court. Second, he argues that application of the payment rule raises a constitutional issue: the Virginia statute of limitations applicable to legal malpractice actions begins to run when the client discharges the malfeasant attorney. Thus, under the payment rule it is possible (and in some cases even likely) that the period of limitations will expire before the right to sue accrues, thereby depriving the aggrieved party of his remedy without due process of law.[2] We consider each of McCoubrey's arguments in turn.

## A. *The Choice of Law*

In a diversity case, a United States District Court sitting in Maryland applies Maryland's choice of law rule. This principle has been settled since *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487 (1941), which extended the rule of *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938), to choice of law questions. Under Maryland's choice of law a tort claim is to be governed by the law of the place of the wrong, the *lex loci delicti. See Naughton v. Bankier*, 114 Md. App. 641, 691 A.2d 712 (1997); *Black v. Leatherwood Motor Coach Corp.*, 92 Md. App. 27, 37, 606 A.2d 295 (1992).

McCoubrey would avoid the consequences of this rule by treating his claim as one for breach of the attorney's employment contract and applying the Maryland conflicts rule governing contract cases. The facts, however, do not support McCoubrey's position. A legal malpractice action may sound in either tort or contract depending upon the context. The difference is illustrated by a simple example: suppose a purchaser of real estate employs a lawyer to examine the title.

---

[2]Concern that the statute of limitations could run before the right to sue accrued was one of the reasons the Maryland court rejected the payment rule in *Roebuck*.

If the lawyer overlooks a lien of record, he is negligent, and has committed a tort. If he takes a fee and never examines the title at all, he has broken his promise to perform a professional service, which is a breach of contract. *See Fishow v. Simpson*, 55 Md. App. 312, 462 A.2d 540, 543-44 (1983). Here, the essence of McCoubrey's claim is the lawyer's negligence for failure to plead a defense in the whistle blower case, not a failure to perform a service he had contracted to provide.

Under the *lex loci delicti* choice of law rule for torts, the situs of the tort is generally deemed to be the place where the last act necessary to complete it took place. *See Scoles & Hay*, *Conflict of Laws*, § 17.2, 571 (2d ed. 1992). The last act required to complete the tort of failing to plead a good defense in a lawsuit would appear to be the place of filing the responsive pleading which omits the defense. In the instant case, this act occurred in Virginia. We note that the offending attorneys were all members of the Virginia bar, and their offices, where the defective pleading was presumably prepared, are located in Virginia. We are mindful of this court's opinion in *Farwell v. Un*, 902 F.2d 282 (4th Cir. 1990), which applied a Maryland choice of law analysis in a medical malpractice case against a psychiatrist. There, the allegedly negligent treatment had been administered in Delaware and the court held that the Delaware standard of care should be used to measure the purported misconduct, even though the last act necessary to complete the tort, the patient's suicide, took place in Pennsylvania. The court noted that a "common sense" analysis pointed to Delaware, where the malpractice took place, as the place of the wrong, even though the damage resulting from the wrong, the decedent's suicide, occurred in Pennsylvania. Both the pure *lex loci delicti* analysis and the common sense approach of *Farwell* point to Virginia as the situs of the tort in this case. Accordingly, we hold that the district court was correct in applying the substantive law of Virginia.

### B. *The Payment Rule*

In *Allied Productions*, *supra*, Virginia's highest court, over a vigorous dissent, adopted the following rule for legal malpractice: "[W]hen a client has suffered a judgment for money damages as the proximate result of his lawyer's negligence such judgment constitutes actual damages recoverable in a suit for legal malpractice only to the extent

such judgment has been paid." *Allied Productions, Inc.*, 232 S.E.2d at 766. In that case, defendant Duesterdick and his law partners were charged with undertaking to defend a lawsuit filed against Allied Productions and negligently allowing a default judgment in the amount of $210,000 to be taken against their client. Allied Productions' malpractice complaint, called a motion for judgment under Virginia law, did not allege that any part of the default judgment had been paid. In the absence of payment, the court reasoned, the client's damages are speculative since a judgment might have been rendered against him even if the suit had been defended. Citing two Virginia cases, *Bartlett v. Recapping, Inc.*, 207 Va. 789, 793, 153 S.E.2d 193, 196 (1967), and *American National Bank v. Ames*, 169 Va. 711, 748, 194 S.E. 784, 797 (1938), the court was guided by analogy to cases of contribution and indemnity.

Justice Poff filed a vigorous and compelling dissent. There were three strings to his bow. First, he alluded to society's interest in deterring legal malpractice and pointed out that the payment rule has the anomalous impact of making it harder for a client to recover against his lawyer if the judgment is large. "The rule would seem to penalize a lawyer for his negligence when it costs his client a modest judgment but grant him immunity when his negligence results in a judgment too large for his client to pay," the Justice said. 232 S.E.2d at 777. Next, Justice Poff pointed out that, if the rule pushes the client into a state of insolvency, it prejudices his innocent creditors. Finally, he argued that the payment rule could produce a multiplicity of suits if the aggrieved client sued his lawyer each time he made a partial payment on the judgment against him.

The dissent in *Allied Productions* gives us pause in applying the payment rule. Other states, including Maryland, in agreement with Justice Poff, allow an aggrieved client to sue his lawyer regardless of whether he has paid the judgment. See *Roebuck v. Steuart*, *supra*. Our task in a diversity case, however, is to apply the substantive law of the appropriate state, not to question the wisdom of the lawmaker. *See Harbor Court Associates v. Leo A. Daly Co.*, 179 F.3d 147 (4th Cir. 1999), which pointed out that the task of a federal court sitting in diversity is to rule upon state law as it exists, not to surmise or suggest its expansion.

*Allied Productions* is the most recent pronouncement of the Virginia Supreme Court on point. It remains for us to consider whether it continues to be the law of Virginia or whether it has been supplanted by legislative enactment. Section 8.01-281 of the Code of Virginia was amended in 1981, some four years after the *Allied Productions* decision. It now reads as follows:

> A party asserting either a claim, counterclaim, cross-claim, or third-party claim or a defense may plead alternative facts and theories of recovery against alternative parties, provided that such claims, defenses, or demands for relief so joined arise out of the same transaction or occurrence. *Such claim, counterclaim, cross-claim, or third-party claim may be for contribution, indemnity, subrogation, or contract, express or implied; it may be based on future potential liability, and it shall be no defense thereto that the party asserting such claim, counterclaim, cross-claim or third-party claim has made no payment or otherwise discharged any claim as to him arising out of the transaction or occurrence.*

Va. Code Ann. § 8.01-281 (Michie 2000) (as amended in 1981 Va. Acts of the General Assembly of the Commonwealth of Virginia) (emphasis added to represent amended language). McCoubrey urges us to hold that this amendment implicitly overruled *Allied Productions* and repudiated the payment rule.

In *Jones v. Hyatt Legal Services*, 38 Va. Cir. 140 (1995), a Virginia trial court accepted the proposition McCoubrey presses upon this court. In *Jones*, the plaintiff contended that the defendant had negligently failed to represent him properly in a prior case, resulting in a judgment against him for $1,160,000 which he had not paid. Relying on *Allied Productions*, defendant moved to dismiss. The court held that, under the plain meaning of § 8.01-281, as amended, the plaintiff could bring a claim for "future potential liability" which might include future payments he was required to make because of his lawyer's malpractice.

Another Virginia trial court, in a decision subsequent to *Jones*, took a different approach. *Pilkington v. NVC of Vienna, Inc.*, 1999 WL

1499537 (Va. Cir. Ct.), was not an attorney malpractice case, but the court did have occasion to construe § 8.01-281. The court said:

> This section and the corresponding Supreme Court rule, Rule 3.10(a), merely authorize litigation of these claims in the underlying action as a means of promoting judicial economy. They neither mandate the filing of all such claims in the underlying action nor affect the settled principle that the rights to contribution and indemnification otherwise arise only upon payment or discharge of the joint obligation. (citation omitted).

*Pilkington*, at 3.

We believe that the decision of Virginia's highest court in *Gemco-Ware, Inc. V. Rongene Mold and Plastics Corp.*, 234 Va. 54, 360 S.E.2d 342 (1987), is a clear indication that, if confronted with the question today, that court would follow *Pilkington* and reject *Jones*. *Gemco-Ware* was a products liability action against the manufacturer of a teakettle that had come apart in use and spilled boiling water on the complainant. Gemco-Ware filed third-party claim for indemnity against Rongene Mold and Plastics, the maker of the teakettle's handle. The court held that, under § 8.01-281, a claim based on future potential liability could be asserted by way of a third-party complaint. The court observed, however, that the provision for such a claim in the statute is a procedural device designed to promote judicial economy and has no effect on substantive law. The court said that "[o]ne federal district court sitting in Virginia has correctly construed the effect of these procedural measures, while another has erroneously interpreted their effect." *Gemco-Ware, Inc.*, 360 S.E.2d at 344. The case construing it correctly was *In re FELA Asbestos Litigation*, 638 F. Supp. 107, 114 (W.D. Va. 1986), in which Judge Kizer held that a cause of action for indemnity accrues at the time of the indemnitee's injury, rather than at the time of the original plaintiff's injury. Section 8.01-281 does not, he opined, change that rule. "In my view," the court said, "the 1981 amendment to Va. Code § 8.01-281 is a procedural device for the sake of judicial economy. It just allows third-party plaintiffs to make these indemnity claims before the actual claim has technically accrued."

Accordingly, we conclude that the Supreme Court of Appeals of Virginia, if called upon to determine whether the 1981 amendment to § 8.01-281 changes the payment rule of *Allied Productions*, would hold that it does not. 638 F. Supp. at 114.

### C. *Due Process*

McCoubrey's final argument is based on the due process clause. The Virginia period of limitations for legal malpractice claims is, upon the facts of this case, three years. *MacLellan v. Throckmorton*, 235 Va. 341, 367 S.E.2d 720 (1988). The inception of this period under Virginia law is the point at which the attorney's employment by the claimant ends. *See Keller v. Denny*, 232 Va. 512, 352 S.E.2d 327, 330 (1987). In McCoubrey's case, the statute began to run in September, 1997, when he discharged the Kellogg firm and replaced it with Hopkins & Sutter. Therefore, the limitations period expired before McCoubrey's cause of action, under the payment rule, accrued.

This issue, however, is not ripe for adjudication. The time to raise it would be when McCoubrey's suit, after he has paid the judgment and obtained the right to sue, is attacked as coming too late. It is at that time in that suit, not now in this suit, that his due process rights would be implicated. The application of the statute of limitations in a given suit, not its potential to bar a future suit, is what raises a due process claim. *See Keller v. Denny*, 352 S.E.2d at 332.

Accordingly, the judgment of the district court is

*AFFIRMED.*