PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

JOHN PALMER; STACEY PALMER,
            *Plaintiffs-Appellees,*

            and

UNITED STATES DEPARTMENT OF
AGRICULTURE, Farm Service Agency,
            *Third Party Defendant-*
            *Appellee,*

            v.                                    No. 06-1151

CITY NATIONAL BANK, of West
Virginia,
            *Defendant-Appellant,*

            and

STUART KAUFMANN; BANK ONE,
N.A.,
            *Defendants.*

Appeal from the United States District Court
for the Southern District of West Virginia, at Charleston.
Robert C. Chambers, District Judge.
(2:05-cv-00458)

Argued: May 23, 2007

Decided: August 16, 2007

Before NIEMEYER and GREGORY, Circuit Judges, and
David C. NORTON, United States District Judge for the
District of South Carolina, sitting by designation.

Affirmed by published opinion. Judge Gregory wrote the opinion, in which Judge Niemeyer and Judge Norton joined.

---

**COUNSEL**

**ARGUED:** Ancil Glenn Ramey, STEPTOE & JOHNSON, Charleston, West Virginia, for Appellant. Isaac J. Lidsky, Appellate Staff, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees. **ON BRIEF:** Scott E. Johnson, STEPTOE & JOHNSON, Charleston, West Virginia, for Appellant. Peter D. Keisler, Assistant Attorney General, Gary Call, United States Attorney, Michael S. Raab, Appellate Staff, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees.

---

**OPINION**

GREGORY, Circuit Judge:

The doctrine of derivative jurisdiction requires that a federal court's jurisdiction over a removed case mirror the jurisdiction that the state court had over the action prior to removal. In this appeal, the district court applied the doctrine and dismissed a removed third-party claim against federal agency defendants because the state court did not possess jurisdiction over those defendants. Derivative jurisdiction has been frequently criticized and Congress has eliminated the doctrine for cases removed under 28 U.S.C. § 1441, the general removal statute. This abrogation, however, did not extend to cases removed under other provisions. Thus, our precedent, in accord with the statutory removal scheme, dictates the application of the derivative-jurisdiction doctrine in cases removed under the federal-officer removal statute, 28 U.S.C. § 1442. No authority exists for creating an exception to the doctrine that would apply in this case. Furthermore, application of derivative jurisdiction in this case does not violate the Equal Protection or Due Process Clauses of the Constitution. Accordingly, we affirm the district court's dismissal of the third-party claim.

## I.

The facts of this appeal are straightforward. City National Bank of West Virginia issued a series of three loans to John and Stacey Palmer. City National alleges that the loans were made in reliance upon the guarantee of the Farm Service Agency ("FSA") of the U.S. Department of Agriculture ("USDA"). After City National issued the loans, the Palmers became delinquent with their payments, and the FSA did not make payment on the loans. City National then foreclosed on the Palmers' farm. Thereafter, the Palmers brought suit in the Circuit Court of Kanawha County, West Virginia, against City National, alleging, *inter alia*, fraud and breach of contract. City National moved for leave to file a third-party complaint against the FSA and USDA (the "federal defendants"). The motion was granted, and City National served a third-party complaint upon the federal defendants, alleging that the FSA failed to honor the loan guarantees and seeking indemnity and contribution.

Pursuant to 28 U.S.C. § 1442(a)(1) (2000), the federal defendants filed a notice of removal, based on their status as federal agencies. After removal to the United States District Court for the Southern District of West Virginia, the federal defendants filed a motion to dismiss the third-party complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and to remand the remaining claims to state court. The federal defendants argued that in cases removed under § 1442(a)(1) the doctrine of derivative jurisdiction applied and the district court's jurisdiction was identical to the state court's jurisdiction prior to removal. Because the United States had not waived its sovereign immunity to contract and tort suits in state court, the state court lacked jurisdiction over the federal defendants. Thus, the federal defendants argued, the district court also lacked jurisdiction. Relying on the derivative-jurisdiction doctrine, the district granted the motion to dismiss, holding that the state court did not have jurisdiction over the third-party claim and thus the district court lacked jurisdiction over the claim as well. The district court remanded the remaining claims. This appeal followed.

## II.

Whether at the suggestion of the parties or otherwise, this Court has an obligation to verify the existence of appellate jurisdiction

before considering the merits of an appeal. *See Hyman v. City of Gastonia*, 466 F.3d 284, 286-87 (4th Cir. 2006). 28 U.S.C. § 1447(d) prohibits this Court from exercising appellate jurisdiction over an order remanding a removed case to state court for lack of subject-matter jurisdiction. *See* 28 U.S.C. § 1447(c), (d); *Thermtron Prods., Inc. v. Hermansdorfer*, 423 U.S. 336, 346 (1976), *overruled on other grounds by Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 714-15 (1996). In this case, because both the stated reason and the only plausible legal explanation for the remand order was the district court's lack of subject-matter jurisdiction over the case following the dismissal of the federal defendants, the remand was made pursuant to 28 U.S.C. § 1447(c). *See Powerex Corp. v. Reliant Energy Servs., Inc.*, 551 U.S. __, __, 127 S. Ct. 2411, 2417-18 (2007). As such, this case falls within the ambit of the § 1447(d) bar on appellate review. "Several cases, however, provide for limited exceptions to the reach of § 1447(d)." *Nordan v. Blackwater Sec. Consulting, LLC (In re Blackwater)*, 460 F.3d 576, 582 (4th Cir. 2006). The exception fashioned by *City of Waco v. U.S. Fidelity & Guaranty Co.*, 293 U.S. 140 (1934), allows for limited review of collateral issues, even if the remand order itself is insulated from review under § 1447(d). *See, e.g.*, *In re Blackwater*, 460 F.3d at 586.

In *Waco*, a third-party defendant removed a state case on the grounds of diversity. 293 U.S. at 141. Following removal, the district court determined that the third-party defendant had not been impleaded properly, and dismissed the third-party claim. *Id.* at 141-42. The dismissal destroyed diversity jurisdiction and, accordingly, the district court remanded the remaining claims to state court. *Id.* at 143. Viewing the district court's decree as embodying three separate orders, the Supreme Court held that the City of Waco could appeal from the order dismissing the third-party claim. *Id.* The Court noted that the remand itself could not be appealed, but that "in logic and in fact the decree of dismissal preceded that of remand and was made by the District Court while it had control of the cause." *Id.* Furthermore, if the dismissal were not appealable, it would be conclusive upon the City of Waco. *Id.* This Court restricts the applicability of the *Waco* exception to purportedly reviewable orders that (1) have a preclusive effect upon the parties in subsequent proceedings and (2) are severable, both logically and factually, from the remand order itself. *In re Blackwater*, 460 F.3d at 586.

After oral argument in this case, the Supreme Court issued its opinion in *Powerex*, 551 U.S. ___, 127 S. Ct. 2411, clarifying the scope of the *Waco* exception. Accordingly, we must consider *Powerex* to decide whether we continue to possess appellate jurisdiction in this matter before considering the merits of City National's appeal. *Cf. Hyman*, 466 F.3d at 286-87 (concluding after oral argument that court lacked appellate jurisdiction).

*Powerex* concerned a suit by various plaintiffs in state court against certain energy companies, alleging that the companies conspired to fix prices in violation of California law. *See* 127 S. Ct. at 2414. In turn, the energy defendants filed cross-claims for indemnity against, among others, two federal government agencies, a Canadian governmental entity (BC Hydro), and Powerex, a wholly owned subsidiary of BC Hydro. *Id.* The cross-defendants removed to federal court, with the federal agencies relying on § 1442(a) and BC Hydro and Powerex relying on § 1441(d) and their status as foreign states under the Foreign Sovereign Immunities Act of 1976 ("FSIA"), 28 U.S.C. § 1603(b)(2). *Id.*

The plaintiffs moved to remand the case to state court, arguing that Powerex was not a foreign state and that the cross-claims against the U.S. agencies and BC Hydro were barred by sovereign immunity. *Id.* The district court concluded that (1) the federal agencies were immune from suit in state court; (2) BC Hydro enjoyed sovereign immunity under the FSIA; and (3) Powerex did not qualify as a foreign state under the FSIA. *Id.* at 2414-15. The district court then remanded the entire case to state court. *Id.* at 2415. The federal agencies and Powerex appealed. The former argued that the district court should have dismissed them outright because of sovereign immunity. Powerex argued that it was a foreign state under the FSIA and thus entitled to remove. The plaintiffs argued that § 1447(d) barred both appeals. The Ninth Circuit rejected the invocation of § 1447(d), concluding that the provision did not bar it from reaching issues of law decided by the district court prior to remand. *Id.*

After concluding that § 1447(d) applies to remands for lack of subject-matter jurisdiction even where the removal itself was proper, and that the remand of the district court was based on a lack of subject-matter jurisdiction, the Supreme Court noted that the Ninth

Circuit relied upon the *Waco* exception in rejecting the application of § 1447(d). *Id.* at 2419. The Court held that *Waco* "does not permit an appeal when there is no *order* separate from the unreviewable remand order." *Id.* The Court continued, noting that Powerex "can point to no District Court order, separate from the remand, to which it objects and to which the issue of its foreign sovereign status is material." *Id.* In conclusion, Powerex's "invocation of *Waco* amounts to a request for one of two impermissible outcomes: an advisory opinion as to its FSIA status that will not affect any order of the District Court, or a reversal of the remand order." *Id.* After concluding that no other exception to § 1447(d) existed, the Court vacated the relevant portion of the Ninth Circuit's judgment and remanded with instructions to dismiss for want of jurisdiction. *Id.* at 2421.

Our most recent discussion of the *Waco* doctrine made clear that "the purportedly reviewable order [must] have a conclusive effect upon the parties' substantive rights." *In re Blackwater*, 460 F.3d at 586. We require that the challenged order have a preclusive effect in subsequent proceedings to satisfy the conclusiveness requirement. *Id.* In addition,"the reviewable decision [must] be able to be 'disaggregated' from the remand order itself." *Id.* Thus, "logical and factual severability, along with conclusiveness, are central requirements of *Waco*'s exception to § 1447." *Id.*

The requirements set forth in *In re Blackwater* governing the applicability of the *Waco* exception conform to *Powerex*'s recent pronouncement. Both requirements ensure that the appealed order is a truly separate order from the remand order and that any action taken by this Court on appeal does not affect the remand order. The conclusiveness requirement guarantees that any purportedly appealable decision is a binding decision on the merits, and not a mere finding of the district court that may be relitigated in the state court upon remand. *See, e.g.*, *id.* at 590 ("[T]he district court's finding that complete preemption did not create federal removal jurisdiction will have no preclusive effect on a subsequent state-court defense of federal preemption."). Similarly, by requiring logical and factual severability, the disaggregation requirement mandates that any purportedly reviewable decision made by the district court was actually prior to the remand order and was a legally discrete conclusion. The severability requirement ensures that the appealable decision was truly distinct

from the remand decision and not "merely a subsidiary legal step[ ] on the way to [the district court's] determination that the case was not properly removed." *Nutter v. Monongahela Power Co.*, 4 F.3d 319, 322 (4th Cir. 1993) (quotation marks omitted). If a decision of the district court meets both requirements of *In re Blackwater*, the decision is truly a separate order from that of the remand and thus reviewable under our precedent and *Powerex*.

The conclusion that the *In re Blackwater* requirements satisfy *Powerex* is supported by Justice Scalia's discussion of the *Waco* exception in his dissent in *Osborn v. Haley*, 549 U.S. ___, 127 S. Ct. 881, 909 (2007). *Osborn* concerned the question of whether § 1447(d) barred appeal of a district court's refusal to substitute the United States as a defendant in a removed action brought against a federal employee under the Westfall Act, 28 U.S.C. § 2679, resulting in a remand of the action to state court. 127 S. Ct. at 893-96. The majority viewed the Westfall Act's certification and substitution regime as directly conflicting with § 1447(d), and thus framed the issue as choosing between two "forum-selecting rule[s]." *Id.* at 896. Because the certification and substitution process was "[t]ailor-made for Westfall Act cases," the majority concluded that Congress intended it to take precedence over § 1447(d). *Id.*

In dissent, Justice Scalia did not view the Westfall Act as conflicting with § 1447(d) and analyzed whether the district court's refusal to substitute the United States as a defendant fell within the *Waco* exception to § 1447(d). *See id.* at 908-09 (Scalia, J., dissenting). Justice Scalia concluded:

> [T]here is a crucial distinction between [*Waco*] and [*Osborn*]: In *Waco*, reversal of the dismissal would not have subverted the remand. There was *no question* that the suit would proceed in state court regardless of whether the diverse party was rightfully or wrongfully dismissed. Nowhere did the *Waco* Court so much as hint that the District Court might need to reexamine its remand order; to the contrary, it was clear that the remand would occur, no matter what . . . . In other words, the remand order and the dismissal order were truly "separate orders"; we could review

> —even reverse—the dismissal order without affecting the remand or its impact on the case.

*Id.* (citation omitted) (quoting *Waco*, 293 U.S. at 142). Justice Scalia noted that if the appeals court substituted the United States as defendant, but did not vacate the remand order as per § 1447(d), the case would return to state court styled as *Osborn v. United States* and would be immediately dismissed because federal district courts have exclusive jurisdiction over FTCA actions. *Id.* Thus, Justice Scalia concluded, "unlike in *Waco*, the District Court's decision on a preliminary matter—here, Westfall Act certification—is inextricably intertwined with the remand order. Since that is so, there is no jurisdiction to review either determination." *Id.* at 909-10.

The conclusiveness and disaggregation requirements of *In re Blackwater* accord with Justice Scalia's persuasive discussion of when a purportedly reviewable order is truly separate from a remand order. A district court decision that has a preclusive effect on the parties and that is logically and factually separable from the remand order is a decision that can be reviewed by this Court without affecting the remand order. Reversal of an independently binding decision, separated from the remand order logically and factually, would not undermine the remand order itself. In sum, the *In re Blackwater* requirements are sufficient to ensure that this Court reviews only decisions that are separate orders from unreviewable remand orders in keeping with the holding of *Powerex*.

Thus, in order to determine whether we have appellate jurisdiction over City National's appeal, we must decide whether the district court's application of derivative jurisdiction and its subsequent dismissal of the United States meet the *In re Blackwater* requirements. The first requirement is that "the purportedly reviewable order have a conclusive effect upon the parties' substantive rights." *In re Blackwater*, 460 F.3d at 586. "We have interpreted this conclusiveness requirement to mean that the challenged order must have a preclusive effect in subsequent proceedings." *Id.* In this case, City National challenges an order dismissing the federal defendants from the case entirely. The dismissal cannot be revisited by the state court on remand, because the federal defendants are no longer parties to the action and were not subject to the remand order. *Cf. Nutter*, 4 F.3d

at 322 (concluding that district court's jurisdictional findings incident to remand could be relitigated in state court and thus the findings were not conclusive upon the parties). As in *Waco*, if the dismissal is not reversed, it is "conclusive upon" City National. 293 U.S. at 143.

In addition to conclusiveness, *In re Blackwater* requires that a purportedly reviewable decision be logically and factually severable from the remand order. 460 F.3d at 586. This requirement is satisfied in the instant case. To begin, the decision on derivative jurisdiction necessarily preceded the remand, because the dismissal of the federal defendants was the very action that deprived the court of jurisdiction and necessitated the remand. *See, e.g.*, *Beauclerc Lakes Condo. Ass'n v. City of Jacksonville*, 115 F.3d 934, 935 (11th Cir. 1997) ("Where . . . the remand is a consequence of the dismissal of claims creating federal jurisdiction, that dismissal is reviewable on appeal."). Furthermore, the dismissal is logically separable from the remand order. The issue of the application of derivative jurisdiction is wholly separate from the reason for the remand. Although the remand was necessitated by the dismissal that resulted from the application of the derivative-jurisdiction doctrine, the legal basis of the remand—lack of subject-matter jurisdiction—did not depend on the district court's interpretation of derivative jurisdiction. In other words, the application of derivative jurisdiction was not a subsidiary legal step to the district court's determination that the case had to be remanded. *Cf. In re Blackwater*, 460 F.3d at 590; *Nutter*, 4 F.3d at 321. The federal defendants properly removed the case under § 1442(a)(1) because they were federal officers. Only after the district court dismissed the claims against the federal defendants did it analyze whether a remand was necessitated because of a lack of jurisdiction. Accordingly, the decision from which City National appeals was legally distinct from the remand order.

Were we to reverse the dismissal of the federal defendants, the remand order would not be "subverted." The remand order did not include the federal defendants, and the state-court proceedings between the Palmers (as plaintiffs) and City National (as defendant) will proceed regardless of any action we take on this appeal. Thus, as in *Waco*, the suit will proceed in state court regardless of whether the federal defendants were correctly dismissed. *See Osborn*, 127 S. Ct. at 909 (Scalia, J., dissenting). By contrast, in *Powerex*, Powerex was

a party to the remand order. If the district court's decision on Powerex's foreign sovereign status were reversed, any appellate court action regarding Powerex would, by necessity, affect the remand order. If the appellate court chose to reverse the district court, but could take no action, then its decision on Powerex's foreign sovereign status would have been "an advisory opinion as to [Powerex's] FSIA status." *Powerex*, 127 S. Ct. at 2419.

Thus, the requirements of *In re Blackwater* are satisfied: City National appeals from a ruling of the district court that is conclusive as well as logically and factually severable from the remand order. Because the issue of the district court's application of derivative jurisdiction is a reviewable order wholly separate from its remand order, we have appellate jurisdiction to consider City National's appeal under the *Waco* exception to § 1447(d).

III.

We review de novo a dismissal for lack of subject-matter jurisdiction. *Welch v. United States*, 409 F.3d 646, 650 (4th Cir. 2005).

A.

The derivative-jurisdiction doctrine arises from the theory that a federal court's jurisdiction over a removed case derives from the jurisdiction of the state court from which the case originated. As the Supreme Court explained in *Lambert Run Coal Co. v. Baltimore & Ohio Railroad Co.*, 258 U.S. 377, 382 (1922), "[t]he jurisdiction of the federal court on removal is, in a limited sense, a derivative jurisdiction. If the state court lacks jurisdiction of the subject-matter or of the parties, the federal court acquires none, although it might in a like suit originally brought there have had jurisdiction." The application of the doctrine often resulted in the dismissal of removed actions that were within the exclusive jurisdiction of the federal courts, because the state court where the action was filed lacked jurisdiction. *See, e.g.*, *id.* (dismissing removed action based on violation of Interstate Commerce Commission rule because federal courts have exclusive jurisdiction over such suits); *Emrich v. Touche Ross & Co.*, 846 F.2d 1190 (9th Cir. 1988) (dismissing portion of removed case brought under Securities Act of 1934 because federal courts have exclusive jurisdic-

tion over such suits). Such results were inefficient and "the subject of a great deal of deserved criticism." 14B Charles Allan Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice & Procedure: Jurisdiction 3d* § 3722, at 481, 487 (3d ed. 1998); *see, e.g.*, *Washington v. Am. League of Prof'l Baseball Clubs*, 460 F.2d 654, 658-59 (9th Cir. 1972) (characterizing the derivative-jurisdiction doctrine as a "kind of legal *tour de force* that most laymen cannot understand, particularly in a case where the federal court not only has subject matter jurisdiction, but has exclusive subject matter jurisdiction"); *Welsh v. Cunard Lines, Ltd.*, 595 F. Supp. 844, 846 (D. Ariz. 1984) ("'[D]erivative jurisdiction' is an archaic concept that impedes justice. It is out of tune with the federal rules. Courts and commentators agree, and urge that, while derivative jurisdiction may be justified conceptually, it leads to unfortunate results and should be abandoned.").

Accordingly, in 1985, Congress amended the general removal statute, 28 U.S.C. § 1441, by adding § 1441(e): "The court to which such civil action is removed is not precluded from hearing and determining any claim in such civil action because the State court from which such civil action is removed did not have jurisdiction over that claim." Judicial Improvements Act of 1985, Pub. L. No. 99-336, § 3, 100 Stat. 633, 637 (1986) (codified as amended at 28 U.S.C.A. § 1441(f) (2007)). Following the 1985 amendment, this Court continued to apply the doctrine for removals effectuated under sections other than § 1441, including § 1442. *See Kasi v. Angelone*, 300 F.3d 487, 504 n.6 (4th Cir. 2002) ("[A] federal court's jurisdiction upon removal under § 1442(a)(1) is derivative of the state court's jurisdiction . . . ."); *United States v. Williams*, 170 F.3d 431, 433 (4th Cir. 1999) (same); *Cromer*, 159 F.3d at 879 (same); *Boron Oil Co. v. Downie*, 873 F.2d 67, 70 (4th Cir. 1989) (same); *accord In re Elko County Grand Jury*, 109 F.3d 554 (9th Cir. 1997) (applying derivative-jurisdiction doctrine in case removed under § 1442); *Edwards v. U.S. Dep't of Justice*, 43 F.3d 312 (7th Cir. 1994) (same). The Eighth Circuit, however, read the amendment as abrogating the entire doctrine, regardless of the method of removal. *See North Dakota v. Fredericks*, 940 F.2d 333, 337 (8th Cir. 1991) ("[T]he policy of Congress underlying new § 1441(e) supports the complete abandonment of the derivative-jurisdiction theory, even though the words of the statute clearly do not reach this far.").

B.

Whether the Eighth Circuit correctly interpreted the 1986 amendment is academic, because in 2002 Congress again amended § 1441, creating a new § 1441(e) and redesignating the prior § 1441(e) as § 1441(f) and slightly changing its language. 21st Century Department of Justice Appropriations Authorization Act, Pub. L. No. 107-273, § 11,020(b)(3)(A), 116 Stat. 1758, 1827 (2002). Thus, the new § 1441(f) reads: "The court to which *a civil action is removed under this section* is not precluded from hearing and determining any claim in such civil action because the State court from which such civil action is removed did not have jurisdiction over that claim." *Id.* (emphasis added).

Commentators speculate that the amendment was intended to endorse the *Fredericks* approach and be the death knell of derivative jurisdiction for all removals. *See, e.g.*, 14B Charles Allan Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice & Procedure: Jurisdiction 3d* § 3721, at 191 (2007 Supp.). Yet these same commentators conclude that the amendment did not accomplish this purpose: "[N]ew § 1441(f) limits the abrogation of the derivative jurisdiction doctrine to cases removed under 28 U.S.C.A. § 1441." *Id.* The legislative history of the 2002 amendment is "sparse," *Glorvigen v. Cirrus Design Corp.*, No. 06-2661, 2006 WL 3043222, at *3 (D. Minn. Oct. 24, 2006), and the Conference Report on the amendment does not discuss the reason for the modification to current § 1441(f), *see* H.R. Conf. Rep. 107-685, *reprinted in*, 2002 U.S.C.C.A.N. 1120, 1151. Thus, there is no legislative history to support the view that Congress intended to embrace *Fredericks* and eliminate the derivative-jurisdiction entirely. Courts examining the amendment have agreed with this conclusion. *See, e.g.*, *Barnaby v. Quintos*, 410 F. Supp. 2d 142, 144 (S.D.N.Y. 2005) ("In amending the statute in 2002, and replacing less precise language with much more specific language, Congress left no doubt that Section 1441(f) applies only to removals under Section 1441 and not to removals under any other section of the United States Code.").

Following the 1985 amendment to § 1441, this Court has applied the derivative-jurisdiction doctrine in several cases involving removal under § 1442. Whatever the intent of the 2002 amendment, its result

was that § 1441(f) is more clear than former § 1441(e) in abrogating derivative jurisdiction only with respect to removals effectuated under § 1441. Thus, our holdings in *Kasi*, *Williams*, and *Cromer* are strengthened, rather than weakened, by the enactment of the new § 1441(f). Accordingly, because the plain language of § 1441(f) limits the abrogation of derivative jurisdiction to removals under § 1441 and because our precedent holds that the doctrine is viable for removals under § 1442, the doctrine applies to the removal at issue in this case.

## C.

City National urges that we create and apply an exception to the derivative-jurisdiction doctrine because West Virginia law compelled City National to implead the federal defendants or waive its claims against them. There is no authority in this Circuit or any other that would allow us to craft specific exceptions to the derivative-jurisdiction doctrine based on state rules of procedure. Because the application of the derivative jurisdiction doctrine affects a district court's jurisdiction over the case, case-specific exceptions are not appropriate. In this case, the state court did not possess jurisdiction over City's third-party claim against the federal defendants. Accordingly, the district court did not gain proper jurisdiction of the claim upon its removal.

*Fredericks* is not to the contrary. Rather than creating an exception, the Eighth Circuit abrogated the entire doctrine on the basis of its view of the equity of the statute. *See Fredericks*, 940 F.2d at 337-38 (discussing doctrine of the equity of the statute and concluding that Congress had "given [courts] more than a hint" as to its disapproval of derivative jurisdiction, thus justifying its complete abrogation). As explained above, we cannot reach such a result in this case because the amendment to the removal statute since *Fredericks* has made it more, rather than less, clear that the abrogation contained within § 1441 applies only to removals under that section.

## IV.

City National raises two constitutional arguments that the application of the derivative jurisdiction in this case violates both the Equal Protection and Due Process Clauses. Both of these arguments fail.

A.

In considering an equal protection challenge, "a statutory classification that neither employs inherently suspect distinctions nor burdens the exercise of a fundamental constitutional right will be upheld if the classification is rationally related to a legitimate state interest." *Star Scientific Inc. v. Beales*, 278 F.3d 339, 351 (4th Cir. 2002). If, however, the regulation impinges on a fundamental right or contains inherently suspect distinctions, "we exercise strict scrutiny review, upholding the statute only if it is narrowly tailored to serve a compelling state interest." *Plyler v. Moore*, 100 F.3d 365, 373 (4th Cir. 1996).

In this case, City National claims that application of derivative jurisdiction in a case removed under § 1442, when the doctrine would not be applied in a case removed under § 1441, unconstitutionally burdens its fundamental right of access to the courts. The district court's application of derivative jurisdiction prevented City National from litigating its claims against the federal defendants in the removed action. City National remains free to bring a separate action against the federal defendants in an appropriate forum, *i.e.*, the Court of Federal Claims, for its contract action, in accordance with the Tucker Act, and a district court, for its indemnity claims, in accordance with the FTCA. Thus, any fundamental right of judicial access that City National has to bring its claims has not been infringed upon as City National has not yet availed itself of the appropriate federal fora for resolving its claims against the federal defendants. *Cf. Lewis v. Casey*, 518 U.S. 343 (1996) (discussing actual-injury requirement as prerequisite to suit alleging violation of fundamental right of access to courts); *McCoubrey v. Kellogg, Krebs & Moran*, 7 Fed. App'x 215, 222 (4th Cir. 2001) ("The application of the statute of limitations in a given suit, not its potential to bar a future suit, is what raises a due process claim.").

City National argues that if it brought a subsequent suit for indemnity or contribution against the federal defendants in a proper forum, any court would apply West Virginia compulsory joinder law to bar the action. Even assuming, *arguendo*, that this hypothesis is correct, the operation of a substantive rule of law to bar a suit does not violate the right of access to a judicial forum. *See Plyler*, 100 F.3d at 373

("Simply put, the Inmates have confused the right of access to the courts with the scope of the available substantive relief."); *cf. Dinh v. Rust Int'l Corp.*, 974 F.2d 500, 502 (4th Cir. 1992) ("[T]here is no federal or state constitutional right to the continued existence of common law causes of action.").

Thus, the application of the derivative-jurisdiction doctrine in this case does not burden City National's fundamental right to access the courts. As such, our review proceeds under the rational-basis standard. *See, e.g.*, *Plyler*, 100 F.3d at 373 (citing *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993)). Under this standard, we afford the challenged statute a strong presumption of validity and will reject a challenge to the statute unless there are no reasonably conceivable facts that could provide a rational basis for the classification. *Id.* (citing *Heller v. Doe*, 509 U.S. 312, 319 (1993) and *Beach*, 508 U.S. at 313)). On this appeal, City has the burden of disproving the existence of any conceivable basis that would support the abrogation of derivative jurisdiction under § 1441, but not under § 1442. *Id.* (citing cases). Under rational-basis review, we "do not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations." *City of New Orleans v. Dukes*, 427 U.S. 297, 303 (1976) (per curiam). "Once we have determined that there exists a plausible reason for the congressional action—and regardless of whether that reasoning actually motivated Congress—our inquiry is at an end." *Plyler*, 100 F.3d at 374.

Removal under § 1441 and removal under § 1442 serve two different ends: "Section 1441 relates to the rights of individuals. Section 1442, although dealing with individuals, vindicates also the interests of government itself; upon the principle that it embodies 'may depend the possibility of the general government's preserving its own existence.'" *Bradford v. Harding*, 284 F.2d 307, 310 (2d Cir. 1960) (quoting *Tennessee v. Davis*, 100 U.S. 257, 262 (1880)). In addition, the sections apply in two distinct scenarios. Section 1441 is the general removal statute and affords the defendant the right to remove a case to federal court through invocation of that court's original subject-matter jurisdiction to hear the case. *See* § 1441(a)-(b). By contrast, federal-officer removal provides a mechanism for federal officers to have their federal defenses adjudicated in a federal forum. *See Willingham v. Morgan*, 395 U.S. 402, 407 (1969) ("[O]ne of the most

important reasons for [federal officer] removal is to have the validity of the defense of official immunity tried in a federal court."); *Kolibash v. Comm. on Legal Ethics of the W. Va. Bar*, 872 F.2d 571, 576-77 (4th Cir. 1989) ("The federal officer removal statute permits a state action to be adjudicated on the merits in a federal court 'free from local interests or prejudice.'" (quoting *Arizona v. Manypenny*, 451 U.S. 232, 241-42 (1981))). Original subject-matter jurisdiction of the district court is not a requirement for removal under § 1442.

The distinctions between general removal and federal-officer removal provide plausible reasons for the congressional action at issue in this case. For example, because any case removed under § 1441 could have originally been brought in federal court, Congress may have thought it irrelevant whether the state court had jurisdiction over the action prior to removal. On the other hand, a case removed under § 1442 may not have had original federal jurisdiction, and thus Congress decided to retain the traditional rule that removal jurisdiction is derivative of state court jurisdiction prior to removal. In addition, Congress may have viewed federal-officer removal as guaranteeing a federal prerogative—adjudication of federal defenses in a federal forum—in as narrow a manner as possible, allowing a federal officer to remove, but mandating that the jurisdiction of the federal court over the removed action derive solely from the state court's jurisdiction. Although the derivative-jurisdiction doctrine may be arcane or inefficient, our inquiry is one of mere rationality. Accordingly, we reject City National's equal protection argument as there is a conceivable rational basis for Congress abrogating derivative jurisdiction for removals effectuated via § 1441, but retaining the doctrine for cases removed under § 1442.

## B.

Finally, City National argues that depriving it of the right to sue the federal defendants amounts to a deprivation of its property interests without due process of law.

To prove a due process claim, a litigant must show that it was deprived of a protected interest without due process of law. *See, e.g.*, *Elmco Props., Inc. v. Second Nat'l Fed. Sav. Ass'n*, 94 F.3d 914, 920 (citing *Board of Regents v. Roth*, 408 U.S. 564, 571 (1972)). As dis-

cussed above, the application of the derivative-jurisdiction doctrine in this case does not bar City National from instituting a separate proceeding against the federal defendants in an appropriate forum. Given this conclusion, the district court's dismissal of City National's third-party complaint did not deprive it of any potential claim against the federal defendants. *Cf. id.* (discussing deprivation of property interest where statutory scheme did not allow late filing and withdrew jurisdiction over claim from all other courts). Because the district court's dismissal of the third-party complaint did not deprive City National of a property interest, City National cannot state a due process violation.

## V.

For the foregoing reasons, we conclude that we possess jurisdiction over City National's appeal, but deny that appeal because the district court properly applied the doctrine of derivative jurisdiction in concluding that it did not possess subject-matter jurisdiction over City National's third-party claims against the federal defendants. Accordingly, we affirm the ruling of the district court.

*AFFIRMED*