Affirmed by published opinion. Judge NIEMEYER wrote the majority opinion, in which Judge AGEE joined. Judge GREGORY wrote a dissenting opinion.
OPINION
NIEMEYER, Circuit Judge:
After Willie Bullock filed this racial discrimination action under Title VII of the Civil Rights Act of 1964 in a North Carolina state court, naming as the defendant the Secretary of the U.S. Department of Homeland Security, the Secretary removed the case to federal court under 28 U.S.C. § 1442(a). She then filed a motion to dismiss, claiming that she did not waive sovereign immunity so as to be subject to suit in state court and, therefore, the state court did not have subject-matter jurisdiction. She also claimed that because the removal process itself did not create jurisdiction in federal court, the federal court likewise did not have subject-matter jurisdiction under the doctrine of derivative jurisdiction. The district court agreed and granted the Secretary’s motion to dismiss.
We conclude that because the United States and the Secretary of Homeland Security did not consent to be sued in a North Carolina state court under Title VII, the state court lacked subject-matter jurisdiction. Inasmuch as removal to federal court, under the doctrine of derivative jurisdiction, did not cure that jurisdictional defect, we affirm the district court’s order.
I
In 2006 Willie Bullock, an African-American male, was hired into the federal air marshal program and, for training, was sent to a federal law enforcement training center in New Mexico. While at the training center, Bullock suffered injuries, diagnosed as shin splints, that restricted his ability to .participate fully in some of the training activities. Shortly before completion of the training program, Bullock was dismissed from the program, being advised that when he recovered, he would have to complete the entire seven-week training program again if he wished to become an air marshal. Bullock claims that because other Caucasian trainees were allowed to graduate from the program despite having-injuries that similarly limited their participation in training exercises, he was discriminated against on account of his race, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.
Bullock commenced this action against Janet Napolitano, the Secretary of the U.S. Department of Homeland Security, filing his complaint in a North Carolina state court (in Wake County), alleging violations of Title VII and related state law. The Secretary removed the case to federal court under 28 U.S.C. § 1442(a)(1) as a suit against a federal officer in her official capacity, and then she filed a motion to *283 dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction. The Secretary claimed that because Bullock sought monetary damages against the United States or its agencies, his action was barred by sovereign immunity, which deprived the state court of subject-matter jurisdiction. Because the federal court did not acquire jurisdiction by removal of the action, the Secretary asserted that, under the doctrine of derivative jurisdiction, the claim had to be dismissed. The Secretary also requested that Bullock’s state law claims be dismissed as preempted by Title VIL
The district court granted the Secretary’s motion, finding that Title VII preempted Bullock’s state law claims and that, with respect to Title VII, the United States had not consented to be sued in state court. Because the state court lacked subject-matter jurisdiction, so too did the federal court under the doctrine of derivative jurisdiction. By order dated January 19, 2010, the district court dismissed this action.
This appeal followed.
II
Bullock contends first that the North Carolina state court had jurisdiction over his Title VII claim because Congress waived sovereign immunity for its discriminatory acts as an employer. See 42 U.S.C. § 2000e-16; Library of Cong. v. Shaw, 478 U.S. 310, 319, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986) (abrogated by statute on other grounds). Bullock argues that because “Title VII contains no language that expressly strips the state courts of their presumptive jurisdiction,” state courts have concurrent jurisdiction with federal courts over Title VII actions. See Yellow Freight Sys., Inc. v. Donnelly, 494 U.S. 820, 823, 110 S.Ct. 1566, 108 L.Ed.2d 834 (1990).
The government contends that Yellow Freight applies only to private employers and not to the United States and its agencies. Yellow Freight did construe Title VII to allow suits in state court against private employers because (1) federal and state courts are presumed to have concurrent jurisdiction over cases arising under the laws of the United States and (2) Title VII contains no language stripping state courts of their “presumptive jurisdiction.” See Yellow Freight, 494 U.S. at 823, 110 S.Ct. 1566. But the government contends that the presumption of concurrent state jurisdiction cannot effect an implied waiver of sovereign immunity because any waiver must be unequivocally expressed in a statutory provision and strictly construed in favor of the United States. See Lane v. Pena, 518 U.S. 187, 192, 116 S.Ct. 2092, 135 L.Ed.2d 486 (1996).
We begin with the statutory language of the waiver in Title VII. Title VII creates the “exclusive, pre-emptive administrative and judicial scheme for the redress of federal employment discrimination.” Brown v. Gen. Servs. Admin., 425 U.S. 820, 829, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976). In 1972, Congress amended Title VII to provide that a federal employee, who has exhausted his administrative remedies, “may file a civil action as provided in section 2000e-5 of this title” against the “head of the department, agency, or unit, as appropriate,” 42 U.S.C. § 2000e-16(c) (emphasis added), and that “the provisions of section 2000e-5(f) through (k) ... shall govern civil actions brought hereunder,” id. § 2000e-16(d). The Supreme Court has held that with these 1972 amendments, Congress waived sovereign immunity, allowing the United States and its agencies to be sued for employment discrimination. Shaw, 478 U.S. at 319, 106 S.Ct. 2957. The waiver thus permits federal employees to sue the United States and its agencies *284 in “a civil action as provided in section 2000e-5.” And the limitation in the waiver to civil actions as provided in § 2000e-5 demands that we look at these provisions in order to understand the scope of the sovereign immunity waiver. See Rochon v. Gonzales, 438 F.3d 1211, 1216 (D.C.Cir.2006) (looking to § 2000e-5(g)(1) to determine whether Congress had waived sovereign immunity under Title VII for retaliation claims).
The provisions of § 2000e-5 regulating civil actions include language stating that suits enforcing Title VII rights may be brought in “[e]ach United States district court and each United States court of a place subject to the jurisdiction of the United States.” 42 U.S.C. § 2000e-5(f)(3). This language is one of the conditions imposed in the waiver of sovereign immunity and must be strictly construed in favor of the United States. See Lane, 518 U.S. at 192, 116 S.Ct. 2092. While § 2000e-5(f)(3) does not mandate that suits be filed in federal courts, it likewise contains no language authorizing Title VII suits to be filed in state courts. The statute is “completely silent” on that point. Yellow Freight, 494 U.S. at 825, 110 S.Ct. 1566.
Sovereign immunity is “jurisdictional in nature,” FDIC v. Meyer, 510 U.S. 471, 475, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994), and “the terms of [a sovereign’s] consent to be sued in any court define that court’s jurisdiction to entertain the suit,” United States v. Sherwood, 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941) (emphasis added). Sovereign immunity is not only a bar to liability but also a bar to the courts in which suits against the United States can be filed, see id. at 588-91, 61 S.Ct. 767, and to the remedies claimed, see Shaw, 478 U.S. at 314-21, 106 S.Ct. 2957. Any statutory waiver of sovereign immunity can thus condition or limit the waiver. See Sherwood, 312 U.S. at 587, 61 S.Ct. 767.
In Sherwood, the Court held that the United States waived sovereign immunity only for claims for certain dollar amounts in the U.S. district courts and for other dollar amounts in the Court of Claims. As the Court stated,
The United States, as sovereign, is immune from suit save as it consents to be sued, and the terms of its consent to be sued in any court define that court’s jurisdiction to entertain the suit.
312 U.S. at 586, 61 S.Ct. 767 (emphasis added) (internal citations omitted). In Sherwood, there was a question of whether the United States could be sued in the Court of Claims for specified amounts in a contract dispute involving private parties. The Court’s reasoning is especially apropos here: “Except as Congress has consented there is no jurisdiction in the Court of Claims more than in any other court to entertain suits against the United States.” Id. at 587-88, 61 S.Ct. 767.
In this case, Congress waived sovereign immunity for Title VII suits brought by federal employees against the United States, but it explicitly provided for jurisdiction only in federal courts. Nowhere in the language of the statutory authorization is there a waiver as to suits that otherwise might be brought in state courts. The Sherwood Court recognized this type of limitation in no uncertain words:
Nor with due regard to [the text and legislative history of the waiver] can we say that the United States has consented to the maintenance of suits against the government in the district courts which could not be maintained in the Court of Claims. The section must be interpreted in the light of its function in giving consent of the Government to be sued, which consent, since it is a relin *285 quishment of a sovereign immunity, must be strictly interpreted.
Sherwood, 312 U.S. at 590, 61 S.Ct. 767 (emphasis added).
Bullock argues that when Congress waived the United States’ sovereign immunity for Title VII actions, it waived the immunity from such actions in any court where they might be brought, and because Yellow Freight construed Title VII to impliedly authorize Title VII suits in state courts, the United States therefore waived its sovereign immunity for Title VII cases filed in state courts.
In Yellow Freight, which involved an employee’s Title VII claim against a private corporation, the Supreme Court interpreted § 2000e-5(f) to grant concurrent jurisdiction to federal and state courts, even though the language and legislative history of Title VII refer only to United States district courts and other United States courts. See Yellow Freight, 494 U.S. at 823-26, 110 S.Ct. 1566. The Court reasoned:
Under our system of dual sovereignty, we have consistently held that state courts have inherent authority, and are thus presumptively competent, to adjudicate claims arising under the laws of the United States. To give federal courts exclusive jurisdiction over a federal cause of action, Congress must, in an exercise of its powers under the Supremacy Clause, affirmatively divest state courts of their presumptively concurrent jurisdiction.
Title VII contains no language that expressly confines jurisdiction to federal courts or ousts state courts of their presumptive jurisdiction. The omission of any such provision is strong, and arguably sufficient, evidence that Congress had no such intent.
Id. at 823, 110 S.Ct. 1566 (emphasis added) (internal quotation marks and citations omitted). The Court thus relied on two propositions to reach its conclusion. First, it recognized a presumption that state courts are competent to adjudicate claims under federal law. Second, it noted that Title VII, while authorizing suits in United States courts and remaining “completely silent” about suits in state courts, did not rebut this presumption by affirmatively divesting state courts of “their presumptively concurrent jurisdiction.”
The fallacy in Bullock’s attempt to apply the logic of Yellow Freight to suits against the United States is that state courts do not have presumptive jurisdiction to decide suits against the United States. The United States has sovereign immunity from such suits and any waiver of that immunity must be “unequivocally expressed” in a statutory provision, which the courts must construe in favor of the United States. Lane, 518 U.S. at 192, 116 S.Ct. 2092. Thus, while suits against private corporations, which do not have sovereign immunity, can be justified by the presumption of concurrent state jurisdiction, a suit against the United States can only rely on an unequivocal waiver contained in a statutory provision. A statute’s “complete silence” on the subject is insufficient. See Shaw, 478 U.S. at 319, 106 S.Ct. 2957 (“[Cjongressional silence does not permit us to read the provision as the requisite waiver of the Government’s immunity”). Thus, even as Bullock urges us to “infer” a waiver of sovereign immunity, the Supreme Court has instructed that a waiver of sovereign immunity “will not be implied.”[1] Lane, 518 U.S. at 192, 116 S.Ct. 2092.
*286 Accordingly, we affirm the district court’s conclusion that the North Carolina state court did not have subject-matter jurisdiction over Bullock’s Title VII claim against the U.S. Secretary of Homeland Security.
Ill
Because the North Carolina state court did not have subject-matter jurisdiction over this case, the district court did not acquire jurisdiction by reason of the case’s removal under 28 U.S.C. § 1442(a) from the state court to federal court. “The jurisdiction of the federal court on removal is, in a limited sense, a derivative jurisdiction. If the state court lacks jurisdiction of the subject-matter or of the parties, the federal court acquires none, although it might in a like suit originally brought there have had jurisdiction.” Lambert Run Coal Co. v. Baltimore & Ohio R.R., 258 U.S. 377, 382, 42 S.Ct. 349, 66 L.Ed. 671 (1922); see also Rodas v. Seidlin, 656 F.3d 610, 614-19 (7th Cir.2011); Palmer v. City Nat’l Bank of W. Va., 498 F.3d 236, 244-46 (4th Cir.2007).
Accordingly, under this doctrine of derivative jurisdiction, because the North Carolina state court did not have subject-matter jurisdiction over Bullock’s Title VII claim against the Secretary, neither did the district court after the Secretary removed the action under 28 U.S.C. § 1442(a).[2] We therefore affirm the district court’s order dismissing this case under Federal Rule of Civil Procedure 12(b)(1).

AFFIRMED

. The dissent characterizes our holding as requiring Congress to “expressly waive exclu *286 sive federal court jurisdiction.” But this confusing characterization of our holding simply misses the point. Following well-established principles, we are requiring Congress to expressly waive sovereign immunity in any forum in which it chooses to allow the federal government to be sued. In disagreeing with our approach and relying on Yellow Freight so heavily, the dissent overlooks the distinction between the questions of whether Congress has made federal jurisdiction over a claim exclusive and whether Congress has waived sovereign immunity. The former is not at issue in this case.

. Congress has specifically abrogated the doctrine of derivative jurisdiction in cases removed under 28 U.S.C. § 1441, but it has not done so with respect to actions removed under 28 U.S.C. § 1442. See 28 U.S.C. § 1441(f) (abrogating the derivative jurisdiction doctrine with respect to cases "removed under this section”); see also Palmer, 498 F.3d at 246.