PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

WILLIE D. BULLOCK,

       *Plaintiff-Appellant,*

v.

JANET NAPOLITANO, Secretary,
United States Department of
Homeland Security,

       *Defendant-Appellee.*

No. 10-1222

Appeal from the United States District Court
for the Eastern District of North Carolina, at Greenville.
Malcolm J. Howard, Senior District Judge.
(5:09-cv-00319-H)

Argued: October 25, 2011

Decided: January 23, 2012

Before NIEMEYER, GREGORY, and AGEE,
Circuit Judges.

Affirmed by published opinion. Judge Niemeyer wrote the majority opinion, in which Judge Agee joined. Judge Gregory wrote a dissenting opinion.

## COUNSEL

**ARGUED:** James Edward Hairston, Jr., HAIRSTON LANE BRANNON, PA, Raleigh, North Carolina, for Appellant. Seth

Morgan Wood, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee. **ON BRIEF:** George E. B. Holding, United States Attorney, Jennifer May-Parker, Joshua B. Royster, Assistant United States Attorneys, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

---

**OPINION**

NIEMEYER, Circuit Judge:

After Willie Bullock filed this racial discrimination action under Title VII of the Civil Rights Act of 1964 in a North Carolina state court, naming as the defendant the Secretary of the U.S. Department of Homeland Security, the Secretary removed the case to federal court under 28 U.S.C. § 1442(a). She then filed a motion to dismiss, claiming that she did not waive sovereign immunity so as to be subject to suit in state court and, therefore, the state court did not have subject-matter jurisdiction. She also claimed that because the removal process itself did not create jurisdiction in federal court, the federal court likewise did not have subject-matter jurisdiction under the doctrine of derivative jurisdiction. The district court agreed and granted the Secretary's motion to dismiss.

We conclude that because the United States and the Secretary of Homeland Security did not consent to be sued in a North Carolina state court under Title VII, the state court lacked subject-matter jurisdiction. Inasmuch as removal to federal court, under the doctrine of derivative jurisdiction, did not cure that jurisdictional defect, we affirm the district court's order.

I

In 2006 Willie Bullock, an African-American male, was hired into the federal air marshal program and, for training,

was sent to a federal law enforcement training center in New Mexico. While at the training center, Bullock suffered injuries, diagnosed as shin splints, that restricted his ability to participate fully in some of the training activities. Shortly before completion of the training program, Bullock was dismissed from the program, being advised that when he recovered, he would have to complete the entire seven-week training program again if he wished to become an air marshal. Bullock claims that because other Caucasian trainees were allowed to graduate from the program despite having injuries that similarly limited their participation in training exercises, he was discriminated against on account of his race, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*.

Bullock commenced this action against Janet Napolitano, the Secretary of the U.S. Department of Homeland Security, filing his complaint in a North Carolina state court (in Wake County), alleging violations of Title VII and related state law. The Secretary removed the case to federal court under 28 U.S.C. § 1442(a)(1) as a suit against a federal officer in her official capacity, and then she filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction. The Secretary claimed that because Bullock sought monetary damages against the United States or its agencies, his action was barred by sovereign immunity, which deprived the state court of subject-matter jurisdiction. Because the federal court did not acquire jurisdiction by removal of the action, the Secretary asserted that, under the doctrine of derivative jurisdiction, the claim had to be dismissed. The Secretary also requested that Bullock's state law claims be dismissed as preempted by Title VII.

The district court granted the Secretary's motion, finding that Title VII preempted Bullock's state law claims and that, with respect to Title VII, the United States had not consented to be sued in state court. Because the state court lacked subject-matter jurisdiction, so too did the federal court under

the doctrine of derivative jurisdiction. By order dated January 19, 2010, the district court dismissed this action.

This appeal followed.

II

Bullock contends first that the North Carolina state court had jurisdiction over his Title VII claim because Congress waived sovereign immunity for its discriminatory acts as an employer. *See* 42 U.S.C. § 2000e-16; *Library of Cong. v. Shaw*, 478 U.S. 310, 319 (1986) (abrogated by statute on other grounds). Bullock argues that because "Title VII contains no language that expressly strips the state courts of their presumptive jurisdiction," state courts have concurrent jurisdiction with federal courts over Title VII actions. *See Yellow Freight Sys., Inc. v. Donnelly*, 494 U.S. 820, 823 (1990).

The government contends that *Yellow Freight* applies only to private employers and not to the United States and its agencies. *Yellow Freight* did construe Title VII to allow suits in state court against *private* employers because (1) federal and state courts are *presumed* to have concurrent jurisdiction over cases arising under the laws of the United States and (2) Title VII contains no language stripping state courts of their "presumptive jurisdiction." *See Yellow Freight*, 494 U.S. at 823. But the government contends that the *presumption* of concurrent state jurisdiction cannot effect an implied waiver of sovereign immunity because any waiver must be unequivocally expressed in a statutory provision and strictly construed in favor of the United States. *See Lane v. Pena*, 518 U.S. 187, 192 (1996).

We begin with the statutory language of the waiver in Title VII. Title VII creates the "exclusive, pre-emptive administrative and judicial scheme for the redress of federal employment discrimination." *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 829 (1976). In 1972, Congress amended Title VII to pro-

vide that a federal employee, who has exhausted his administrative remedies, "may file a *civil action as provided in section 2000e-5* of this title" against the "head of the department, agency, or unit, as appropriate," 42 U.S.C. § 2000e-16(c) (emphasis added), and that "the provisions of section 2000e-5(f) through (k) . . . shall govern civil actions brought hereunder," *id.* § 2000e-16(d). The Supreme Court has held that with these 1972 amendments, Congress waived sovereign immunity, allowing the United States and its agencies to be sued for employment discrimination. *Shaw*, 478 U.S. at 319. The waiver thus permits federal employees to sue the United States and its agencies in "a civil action as provided in section 2000e-5." And the limitation in the waiver to civil actions as provided in § 2000e-5 demands that we look at these provisions in order to understand the scope of the sovereign immunity waiver. *See Rochon v. Gonzales*, 438 F.3d 1211, 1216 (D.C. Cir. 2006) (looking to § 2000e-5(g)(1) to determine whether Congress had waived sovereign immunity under Title VII for retaliation claims).

The provisions of § 2000e-5 regulating civil actions include language stating that suits enforcing Title VII rights may be brought in "[e]ach United States district court and each United States court of a place subject to the jurisdiction of the United States." 42 U.S.C. § 2000e-5(f)(3). This language is one of the conditions imposed in the waiver of sovereign immunity and must be strictly construed in favor of the United States. *See Lane*, 518 U.S. at 192. While § 2000e-5(f)(3) does not mandate that suits be filed in federal courts, it likewise contains no language authorizing Title VII suits to be filed in state courts. The statute is "completely silent" on that point. *Yellow Freight*, 494 U.S. at 825.

Sovereign immunity is "jurisdictional in nature," *FDIC v. Meyer*, 510 U.S. 471, 475 (1994), and "the terms of [a sovereign's] consent to be sued *in any court* define that court's jurisdiction to entertain the suit," *United States v. Sherwood*, 312 U.S. 584, 586 (1941) (emphasis added). Sovereign immu-

nity is not only a bar to liability but also a bar to the courts in which suits against the United States can be filed, *see id.* at 588-91, and to the remedies claimed, *see Shaw*, 478 U.S. at 314-21. Any statutory waiver of sovereign immunity can thus condition or limit the waiver. *See Sherwood*, 312 U.S. at 587.

In *Sherwood*, the Court held that the United States waived sovereign immunity only for claims for certain dollar amounts in the U.S. district courts and for other dollar amounts in the Court of Claims. As the Court stated,

> The United States, as sovereign, is immune from suit save *as it consents* to be sued, and the terms of its consent to be sued *in any court* define that court's jurisdiction to entertain the suit.

312 U.S. at 586 (emphasis added) (internal citations omitted). In *Sherwood*, there was a question of whether the United States could be sued in the Court of Claims for specified amounts in a contract dispute involving private parties. The Court's reasoning is especially apropos here: "Except as Congress has consented there is no jurisdiction in the Court of Claims more than in any other court to entertain suits against the United States." *Id.* at 587-88.

In this case, Congress waived sovereign immunity for Title VII suits brought by federal employees against the United States, but it explicitly provided for jurisdiction only in federal courts. Nowhere in the language of the statutory authorization is there a waiver as to suits that otherwise might be brought in state courts. The *Sherwood* Court recognized this type of limitation in no uncertain words:

> Nor with due regard to [the text and legislative history of the waiver] can we say that the United States has consented to the maintenance of suits against the government in the district courts which could not be

maintained in the Court of Claims. The section must be interpreted in the light of its function in giving consent of the Government to be sued, which consent, since it is a relinquishment of a sovereign immunity, *must be strictly interpreted*.

*Sherwood*, 312 U.S. at 590 (emphasis added).

Bullock argues that when Congress waived the United States' sovereign immunity for Title VII actions, it waived the immunity from such actions in *any* court where they might be brought, and because *Yellow Freight* construed Title VII to impliedly authorize Title VII suits in state courts, the United States therefore waived its sovereign immunity for Title VII cases filed in state courts.

In *Yellow Freight*, which involved an employee's Title VII claim against a private corporation, the Supreme Court interpreted § 2000e-5(f) to grant concurrent jurisdiction to federal and state courts, even though the language and legislative history of Title VII refer only to United States district courts and other United States courts. *See Yellow Freight*, 494 U.S. at 823-26. The Court reasoned:

> Under our system of dual sovereignty, we have consistently held that state courts have inherent authority, and are thus *presumptively competent*, to adjudicate claims arising under the laws of the United States. To give federal courts exclusive jurisdiction over a federal cause of action, Congress must, in an exercise of its powers under the Supremacy Clause, affirmatively divest state courts of their presumptively concurrent jurisdiction.

> * * *

> Title VII contains no language that expressly confines jurisdiction to federal courts or ousts state

courts of their presumptive jurisdiction. The omission of any such provision is strong, and arguably sufficient, evidence that Congress had no such intent.

*Id.* at 823 (emphasis added) (internal quotation marks and citations omitted). The Court thus relied on two propositions to reach its conclusion. First, it recognized a *presumption* that state courts are competent to adjudicate claims under federal law. Second, it noted that Title VII, while authorizing suits in United States courts and remaining "completely silent" about suits in state courts, did not rebut *this presumption* by affirmatively divesting state courts of "their presumptively concurrent jurisdiction."

The fallacy in Bullock's attempt to apply the logic of *Yellow Freight* to suits against the United States is that state courts do not have presumptive jurisdiction to decide suits against the United States. The United States has sovereign immunity from such suits and any waiver of that immunity must be "unequivocally expressed" in a statutory provision, which the courts must construe in favor of the United States. *Lane*, 518 U.S. at 192. Thus, while suits against private corporations, which do not have sovereign immunity, can be justified by the presumption of concurrent state jurisdiction, a suit against the United States can only rely on an unequivocal waiver contained in a statutory provision. A statute's "complete silence" on the subject is insufficient. *See Shaw*, 478 U.S. at 319 ("[C]ongressional silence does not permit us to read the provision as the requisite waiver of the Government's immunity"). Thus, even as Bullock urges us to "infer" a waiver of sovereign immunity, the Supreme Court has instructed that a waiver of sovereign immunity "will not be implied."[1] *Lane*, 518 U.S. at 192.

---

[1]The dissent characterizes our holding as requiring Congress to "expressly waive exclusive federal court jurisdiction." But this confusing characterization of our holding simply misses the point. Following well-

Accordingly, we affirm the district court's conclusion that the North Carolina state court did not have subject-matter jurisdiction over Bullock's Title VII claim against the U.S. Secretary of Homeland Security.

## III

Because the North Carolina state court did not have subject-matter jurisdiction over this case, the district court did not acquire jurisdiction by reason of the case's removal under 28 U.S.C. § 1442(a) from the state court to federal court. "The jurisdiction of the federal court on removal is, in a limited sense, a derivative jurisdiction. If the state court lacks jurisdiction of the subject-matter or of the parties, the federal court acquires none, although it might in a like suit originally brought there have had jurisdiction." *Lambert Run Coal Co. v. Baltimore & Ohio R.R.*, 258 U.S. 377, 382 (1922); *see also Rodas v. Seidlin*, 656 F.3d 610, 614-19 (7th Cir. 2011); *Palmer v. City Nat'l Bank of W. Va.*, 498 F.3d 236, 244-46 (4th Cir. 2007).

Accordingly, under this doctrine of derivative jurisdiction, because the North Carolina state court did not have subject-matter jurisdiction over Bullock's Title VII claim against the Secretary, neither did the district court after the Secretary removed the action under 28 U.S.C. § 1442(a).[2] We therefore

established principles, we are requiring Congress to expressly waive *sovereign immunity* in any forum in which it chooses to allow the federal government to be sued. In disagreeing with our approach and relying on *Yellow Freight* so heavily, the dissent overlooks the distinction between the questions of whether Congress has made federal jurisdiction over a claim exclusive and whether Congress has waived sovereign immunity. The former is not at issue in this case.

[2]Congress has specifically abrogated the doctrine of derivative jurisdiction in cases removed under 28 U.S.C. § 1441, but it has not done so with respect to actions removed under 28 U.S.C. § 1442. *See* 28 U.S.C. § 1441(f) (abrogating the derivative jurisdiction doctrine with respect to cases "removed under this section"); *see also Palmer*, 498 F.3d at 246.

affirm the district court's order dismissing this case under Federal Rule of Civil Procedure 12(b)(1).

*AFFIRMED*

GREGORY, Circuit Judge, dissenting:

Under unanimous Supreme Court precedent, a plaintiff may file a suit alleging a violation of Title VII in either state or federal court. The remaining limitation that exists where the defendant is a federal employer—sovereign immunity—was expressly waived in Title VII actions via § 2000-e16. Today's majority incorrectly extends the requirement that Congress expressly waive sovereign immunity to also require Congress to likewise expressly waive exclusive federal jurisdiction over Title VII actions, a jurisdiction that is neither exclusive nor presumed under our system of dual sovereignty and binding Supreme Court precedent. For these reasons, I respectfully dissent.

I.

The question of whether the United States or its agency may be sued in state court under Title VII is a novel one in this Circuit and elsewhere. It is undisputed that in Title VII cases, the United States has waived sovereign immunity where the federal government is the employer. *See* 42 U.S.C. § 2000e-16; *Library of Congress v. Shaw*, 478 U.S. 310, 319 (1986) (abrogated by statute on other grounds). The Government, however, asks this Court to narrowly construe this waiver as one that limits suits to U.S. district courts.

We first look to the express language of the statute to determine whether Congress has expressly prohibited a particular term or condition of suit. The majority is correct that the relevant statutory language prescribing the route to judicial relief for aggrieved federal employees is 42 U.S.C. § 2000e-16. However, contrary to the majority's contention, *ante* at 6, the

express language of the statute does *not* "explicitly provide[ ] for jurisdiction only in federal courts."

Section 2000e-16 states, in pertinent part, that a federal employee "may file a civil action as provided in section 2000e-5 of this title." With respect to jurisdiction — the disputed "condition" in this case — § 2000e-5 then states "[e]ach United States district court and each United States court of a place subject to the jurisdiction of the United States shall have jurisdiction of actions brought under this subchapter." 42 U.S.C. § 2000e-5(f)(3).

Significantly, the provision does not specify *exclusive* federal jurisdiction nor does it foreclose the possibility of pursuing a Title VII remedy in state court. This is unlike a number of consent statutes in which Congress unequivocally stated that the jurisdiction of the federal courts is exclusive. The Federal Torts Claims Act illustrates this distinction. *See* 28 U.S.C. § 1346(b) (specifying that U.S. district courts shall have "exclusive" jurisdiction); *see also*, *Taffin v. Levitt*, 493 U.S. 455, 471 (1991) (Scalia, J., concurring) (listing statutes that specifically recite that suit may be brought "only" in federal court). If Congress intends to limit jurisdiction to federal courts, it knows how to do so.

But even more importantly, the Supreme Court interpreted this *very* provision, § 2000e-5(f)(3), in *Yellow Freight System, Inc. v. Donnelly* and unanimously determined it did *not* divest state courts of their concurrent authority to adjudicate Title VII claims. 494 U.S. 820, 823-26 (1990). While *Yellow Freight* involved a Title VII action against a private employer, and the majority understandably seeks to distinguish the decision on that ground, the jurisdictional provision it points to today as allegedly providing exclusive federal court jurisdiction to adjudicate claims against a *federal* employer is the *very same* jurisdictional provision the unanimous Court construed in *Yellow Freight* to conclude that Congress did *not* limit jurisdiction to federal courts; that is, § 2000e-5(f)(3). *See*

*Yellow Freight*, 494 U.S. at 823 (analyzing the text of Title VII and directly quoting § 2000e-5(f)(3) as the pertinent statutory language). It cannot be that the same provision has one meaning for private sector employees and another for federal employees where Congress expressly waived sovereign immunity and provided that a federal employee may file a civil action *in the same manner* as private sector employees. *See* 42 U.S.C. § 2000e-16(c).

What's more, nothing in the language or reasoning of *Yellow Freight* limits its holding to suits against private employers. To the contrary, the opinion paints with a broad brush. The Court found that "[u]nlike a number of statutes in which Congress unequivocally stated that the jurisdiction of the federal courts is exclusive, Title VII contains *no language* that expressly confines jurisdiction to federal courts or ousts state courts of their presumptive jurisdiction." *Id.* at 823 (emphasis added). And despite the Court's acknowledgement of the "persuasive showing that most . . . involved in the enactment, amendment, enforcement, and interpretation of Title VII expected that such litigation would be processed exclusively in federal courts," the Court still found "no reason to question the presumption that state courts are just as able as federal courts to adjudicate Title VII claims." *Id.* at 826.

While "we must construe waivers strictly in favor of the sovereign . . . and not enlarge the waiver 'beyond what the language requires,'" *Shaw* 478 U.S. at 318, we have never gone so far as to require Congress to expressly waive exclusive federal court jurisdiction, a jurisdiction that is neither exclusive nor presumed. *See Taffin*, 493 U.S. at 458 ("[W]e have consistently held that state courts have inherent authority, and are thus presumptively competent, to adjudicate claims arising under the laws of the United States."); *Yellow Freight*, 494 U.S. at 823 ("To give federal courts exclusive jurisdiction over a federal cause of action, Congress must, in an exercise of its powers under the Supremacy Clause, affirmatively divest state courts of their presumptively concurrent

jurisdiction.") (internal citations omitted). In every case the majority cites as requiring express consent to a condition to suit, a party was seeking to subject the federal government to an unusual condition to suit or arguing that Congress had consented to enlarged monetary penalties.* State court jurisdiction, however, is not an enlarged monetary penalty nor is it an unusual condition in our system of dual sovereignty.

In sum, a unanimous Supreme Court has unequivocally stated § 2000e-(f)(3) does not give federal courts exclusive jurisdiction nor does it foreclose the possibility of pursuing a Title VII remedy in state court. Because a private sector litigant may file a Title VII claim in state court and 42 U.S.C. § 2000e-16(c) provides that a federal employee may file a civil action *in the same manner* as private sector employees, so too can a public sector litigant file a Title VII action in state court. Nothing in the text of Title VII itself, the Supreme Court's interpretation of that text in *Yellow Freight*, or our time-honored system of dual sovereignty indicates otherwise.

## II.

Under the doctrine of derivative jurisdiction, the federal court properly assumed jurisdiction over the parties and the claim, as the state court had jurisdiction over Bullock's Title VII action. Accordingly, I would reverse the district court's dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction.

---

*In *Shaw*, the Supreme Court was faced with the question of whether Congress had consented to the recovery of *interest*. 48 U.S. at 312. Similarly, in *Lane v. Pena*, 518 U.S. 187 (1996), the disputed condition was whether Congress waived its immunity from a *monetary damages* award. And in *United States v. Sherwood*, the Court analyzed whether Congress waived sovereign immunity only for claims for certain *dollar amounts* in the U.S. district courts and for other *dollar amounts* in the Court of Claims. 312 U.S. 584, 587 (1941).